IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ROBERT BURKETT | * |
| | * |
| v. | *   Civil No. JFM-05-896 |
| | * |
| WICOMICO COUNTY, et al. | * |
| | * |

\*\*\*\*\*

MEMORANDUM

Defendants Douglas Devenyns and Wicomico County hired plaintiff Robert Burkett to implement a comprehensive treatment program for prison inmates. This suit arises from the defendants' decision to terminate Burkett's employment. Discovery is now complete, and pending before the court is the defendants' motion for summary judgment. For the reasons that follow, the motion will be granted.

I

Burkett has worked in the social services and mental health field since graduating from college in 1985. In 1994 he began developing a proposal for a comprehensive treatment program for prison inmates. Calling it the "Prophecy Program," Burkett envisioned that it would help inmates address and cope with the myriad issues that commonly confront the incarcerated *e.g.*, drug and alcohol abuse and reassimilation into society after release.

Over the next few years Burkett sought to secure funding for his proposal so that he could turn his program into reality. In 2001 he was introduced to Devenyns, Director of the Wicomico County Department of Corrections ("Department"). Based upon that meeting and subsequent discussions, Devenyns concluded that the Prophecy Program was a promising idea that meshed well with his plans for the county's Detention Center. A year later, in the summer of 2002, he gave

1

Burkett the green light to begin developing the program with the help of two other individuals, William Purnell and Marlow Fontain.

The Department only had limited funds to invest in the endeavor, however. Accordingly, Devenyns orally agreed to commit a total of $17,500, with Burkett and Purnell each to receive $1,770.00 biweekly for work performed during the months of August and September 2002. Devenyns made it clear that after this seed money was expended, Burkett would have to obtain outside funding through grants and charitable contributions.

Work on the program began immediately, and pursuant to his oral agreement with Devenyns, Burkett received four checks during the months of August and September. Three were for $1,770.83, while the other was for $1,239.58. At the end of this two-month period Burkett did begin soliciting funds from outside sources. But he also continued to receive periodic checks from the Department for conducting workshops in conjunction with his work for the Detention Center. The last of these checks was issued in January 2004. Each time he accepted a check from the Department, whether it was one of the original four or the ones issued thereafter, Burkett signed a form acknowledging that he was a contractor and was therefore "responsible for payment of any and all taxes due related to this check."

Based on Burkett's work, the Maryland Governor's Office of Crime Control and Prevention ("GOCCP") awarded the County a one million dollar grant in February 2004. The grant was to be paid out over three years. Thus, with a steady stream of funding in place, the Department officially hired Burkett as the "Residential Substance Abuse and Treatment Program Administrator."

Burkett signed a written employment contract memorializing his new position on February 19, the official term of which ran from February 1, 2004 to January 31, 2005. Burkett was to be paid

$51,000 for that year, and the County could renew the contract for two additional one-year terms at its own discretion. Significant to this dispute, the contract contained the following provision:

> Termination: This agreement shall be terminated upon the occurrence of one of the following conditions or events: a) as provided in Section Three (3) hereof; b) by death of the employee; c) *pursuant to County personnel rules and procedures*; or d) by lack of continued funding from the Governor's Office of Crime Control and Prevention.

(emphasis added).

The County personnel rules and procedures provide that:

> Each applicant selected to fill a full time or regular part time position is automatically placed in a probationary status. Probationary employees will be evaluated on or before the expiration date of the probationary period. At this time, the department head shall submit a performance evaluation to be considered in determining whether the employee will be removed from probation, dismissed, or extended on probation. *Employees on an initial probationary period are considered "at will" employees*.

(emphasis added).

The probationary period for employees other than police and correctional officers is at least six months. Burkett does not contest that he was subject to this initial probationary period.

Devenyns fired Burkett on June 16, 2004, only four months into his employment. In his termination letter to Burkett, Devenyns listed the following reasons for his decision: 1) failure to perform the duties and responsibilities stipulated in your employment contract; 2) loafing, wasting time or inattention to duty; 3) delay or failure to carry out assigned work or instructions in a reasonable amount of time; 4) insubordination; 5) making false, malicious unfounded or irresponsible statements against, or to, other employees or officials; 6) disclosing information of a

confidential nature to unauthorized persons, or any action by an employee that would create poor public relations; 7) failure to be truthful.

Elaborating further on these reasons during his deposition, Devenyns stated that Burkett had not finished developing the Prophecy Program; he had failed to obtain licensure from the Maryland Department of Health and Mental Hygiene as a certified addictions counselor as required by the contract; he had been insubordinate in his dealings with other County officials on three to five occasions; and he had used the gym and laundry facilities at the Detention Center during work hours. Additionally, Burkett had filed a grievance with GOCCP and contacted other government officials and members of the press accusing Devenyns and Lori Brewster, the Deputy Health Officer for the County, of engaging in illegal activities related to hiring practices and the grant money, which Devenyns claimed was baseless and malicious.

The County personnel rules and procedures include a process for employees to file a grievance for wrongful termination. However, employees serving an initial probationary period are explicitly excluded from taking advantage of this process except when they allege that the basis for their termination was illegal. Burkett made no such allegation when he was terminated, and he never attempted to take advantage of the grievance process.

In March 2005 Burkett filed suit against Devenyns and the County in the Circuit Court for Wicomico County. The defendants removed the case to this court the next month. Discovery was completed in November 2005.

Burkett asserts three causes of action: breach of an implied covenant of good faith and fair dealing in the written employment agreement (against both defendants); failure to pay wages for the time period between October 2002 and February 2004 (against the County only); and violation of

his federal constitutional rights under (against both defendants)[1]. He is seeking $100,000 in compensatory and punitive damages from each defendant for the breach of contract and constitutional violations, and $59,384 in unpaid wages from the County.

II

Summary judgment is proper where there is no genuine issue of material fact and the moving party proves that it is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). When assessing a motion for summary judgment, the court must draw all justifiable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Although the party moving for summary judgment initially bears the burden of showing there is no genuine issue of fact, the non-moving party cannot rest on the allegations of his pleadings but rather must show-through affidavits, depositions, answers to interrogatories, or admissions on file-specific facts showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[1] The only facts alleged in the complaint upon which Burkett's constitutional claim is based relate to the termination of his employment contract. Consistent with these allegations, in his answer to an interrogatory asking him to describe the basis for his claim under §1983, he stated: "Although I was under a contract with the Wicomico County and the Detention Center, I was denied any appeal or hearing with regards to termination of my employment." In opposing defendants' summary judgment motion, Burkett seeks to expand his constitutional claims by arguing that he was discharged because he had exercised his First Amendment rights. In effect, in making this argument Burkett is seeking to file an amended complaint. He may not do so because the deadline set in the scheduling order for filing additional claims was July 26, 2005. Burkett has not shown good cause, as required by Fed. R. Civ. P. 16(b), for not complying with this deadline. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *Marcum v. Zimmer*, 163 F.R.D. 250 (S.D. W.Va. 1995).

Plaintiff also argues in his summary judgment opposition that he has not been paid one of the $1,770 checks he had been promised and only $6,552.07 of the originally negotiated figure of $17,500 that Devenyns allegedly had agreed to pay directly to him. Again, however, no such claims are asserted in the complaint, and Burkett did not seek to amend the complaint to make any allegations concerning them before the July 26, 2005 deadline.

5

324 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

III

Burkett's breach of contract claim, as asserted in the complaint, is premised upon the defendants' alleged failure to act in accordance with an implied covenant of good faith and fair dealing. Specifically, Burkett alleges that the following actions of the defendants were in bad faith: terminating him without proper cause; failing to compensate him for work performed between October 22 to February 2004; and undermining his ability to properly perform his duties by creating a hostile work environment. These claims fail for the simple reason that the Maryland Court of Appeals in *Suburban Hospital v. Dwiggins*, 324 Md. 294 (Md. 1991), explicitly refused "to impose a general requirement of good faith and fair dealing in at-will employment situations . . . ." *Id*. at 310. Impliedly conceding that his stated theory of recovery is invalid, Burkett does not even mention the purported covenant of good faith and fair dealing in his opposition memorandum. Instead, he attempts to resurrect the claims by switching the focus to the post-termination grievance process provided for in the Personnel Manual and his newly articulated theory that he was terminated because of his exercise of his First Amendment rights. *See supra* note 1. In that regard he contends that it was "clear" at the time of his firing he was being dismissed for speaking out about Devenyns' and Brewster's conduct and that his firing was therefore illegal. Further, relying upon *Staggs v. Blue Cross of Maryland*, 486 A.2d 798 (Md. Ct. Spec. App. 1985), he claims that under the terms of the Personnel Manual he had a contractual right to appeal his termination. Because the defendants did not affirmatively initiate this process, Burkett argues that they breached their employment agreement with him. *See id*. at 803 (holding that "policy statements that limit the

6

employer's discretion to terminate an indefinite employment or that set forth a required procedure for termination of such employment may, if properly expressed and communicated to the employee, become contractual undertakings by the employer that are enforceable by the employee").

Even assuming that Burkett could properly amend his complaint to cure his omission of this new theory, his claim would still fail. "The expressed personnel policies at issue in *Staggs* consisted of provisions of detailed steps of progressive discipline that *must be followed* before an employee could be discharged." *Marrs v. Marriott Corp.*, 830 F. Supp. 274, 279 (D.Md. 1992) (emphasis added). Here, in contrast, the County's post-termination grievance process is not available to terminated at-will employees as a matter of course. Rather, to take advantage of it an at-will employee must first allege that his termination was illegal. The onus of initiating the process is therefore on the employee, not the employer. To hold otherwise would essentially require the County, in order to minimize its exposure to liability, to assume that every terminated at-will employee will later contend that their termination was illegal and thus automatically grant them a hearing. Such a result would eviscerate the Personnel Manual's clear distinction between at-will employees and non-at-will employees with respect to the grievance process. *Cf. id.* at 280 ("Courts in Maryland, as in other jurisdictions have consistently held that the provision of a grievance procedure, standing alone, does not alter an employee's at will status.") (citing *Dwiggins*, 324 Md. at 307-08).

It was therefore Burkett's obligation to notify Devenyns or the Department within in a timely manner that he believed his termination to be illegal. Neither Devenyns nor the County owed a duty to Burkett to initiate the grievance process for him. *See Dwiggins*, 324 Md. at 307. Because Burkett did not fulfill this obligation, his claim is without merit.

IV

Burkett's constitutional claims, as asserted in the complaint, are premised upon an allegation that he had a protected property and liberty interest in retaining his employment absent being afforded the opportunity to appeal his termination through the County's grievance process. According to Burkett, the defendants' failure to make available to him the grievance process was a violation of his right to procedural and substantive due process. *See Cleveland Bd. Of Education v. Loudermill*, 470 U.S. 532, 538 (1985) (stating that a state may not deprive a government employee of their property right in continued employment without due process); *Norton v. Macy*, 417 F.2d 1161, 1164 (D.C. Cir. 1976) ("The Government's obligation to accord due process sets at least minimal substantive limits on its prerogative to dismiss its employees: it forbids all dismissals which are arbitrary and capricious.").

This argument lacks merit for the same reasons just stated in Section III. Burkett did not, as an at-will employee, have an absolute right to participate in the grievance process. Instead, his right to participate was triggered only if he first alleged that his termination was illegal. Because he never took this initial step, the grievance process was not available to him. Consequently, he possessed no constitutionally protected interest.

V

In Count Three of his complaint, entitled "Failure to Pay Wages," Burkett alleges that the defendants violated the terms of his written employment agreement by not compensating him for 2,600 hours of work he performed between October 2002 and February 2004. This claim is patently without merit. The agreement concerned only Burkett's prospective employment beginning in February 2004 as the Detention Center's Residential Substance Abuse and Treatment Program

Administrator; it does not mention Burkett's previous work at the Detention Center.[2] Again impliedly conceding that summary judgment in favor of the defendants is appropriate, Burkett simply does not address this claim in his opposition memorandum.

In sum, the defendants' motion for summary judgment is granted. A separate order is being entered herewith.

Date: March 24, 2006                    /s/
                                        J. Frederick Motz
                                        United States District Judge

---

[2] In an effort to cover all their bases, the defendants discuss in their memoranda whether Burkett could state a valid claim under Maryland's Wage Payment and Collection Law ("WCPL"), Md. Code Ann. Lab. & Empl. § 3-501 *et seq*. They contend that he could not because, they argue, the WCPL applies only to non-governmental employers. *Id*. § 3-501(b). Although this argument appears meritorious, I need not reach it.